## J. A. THARP v. GERTRUDE BLEW.

(151 N. W. 1.)

Plaintiff and defendant entered into a contract whereby plaintiff performed certain labor upon the farm of the defendant. In the trial below, the court

gave certain instructions set forth in the opinion, which are examined, and, *Held:*

**Instructions to jury — inadequate — confusing — misleading — new trial — verdict — reduction.**

That said instruction as a whole is inadequate, confusing, and misleading, but in view of the fact that this is the second appeal in this case to this court, and the interests of the parties demand that the matter be finally settled, it is ordered: That a new trial be granted, unless plaintiff, within thirty days after the receipt of the remittitur in the lower court, shall consent, in writing, to a reduction of the amount of the verdict to the sum of $35.10.

Opinion filed January 29, 1915.  Rehearing denied February 20, 1915.

Appeal from the District Court of Sargent County, *Allen,* J. from a judgment in favor of plaintiff.  Defendant appeals.

Reversed on conditions.

*Wolfe & Schneller,* for appellant.

Appellate courts are inclined to overlook mere technicalities and irregularities in the conduct of the trial, where from the whole record it appears that they did not render the trial unfair or the result unjust.  But where well established rules of evidence and procedure are violated and ignored, such a trial cannot be considered a fair trial, to which the aggrieved party is entitled at all times.  Hearsay evidence was offered and admitted.  This was reversible error.  State v. Ah Lee, 18 Or. 540, 23 Pac. 424; Hopt v. Utah, 110 U. S. 574, 28 L. ed. 262, 4 Sup. Ct. Rep. 202, 4 Am. Crim. Rep. 417; Morell v. Morell, 157 Ind. 179, 60 N. E. 1093; Dixon v. Labry, 16 Ky. L. Rep. 522, 29 S. W. 21; Shaw v. People, 3 Hun, 272, 2 Cow. Crim. Rep. 200; 6 Enc. Ev. 443; Dysart Peerage Case, L. R. 6 App. Cas. 489; Ellicott v. Pearl, 10 Pet. 436, 9 L. ed. 485; Amann v. Lowell, 66 Cal. 306, 5 Pac. 363; Warren v. Nichols, 6 Met. 261; Westfield v. Warren, 8 N. J. L. 249; Coleman v. Southwick, 9 Johns. 45, 6 Am. Dec. 253; Lent v. Shear, 160 N. Y. 462, 55 N. E. 2; Farmers' Bank v. Whitehill, 16 Serg. & R. 89; Dr. Harter Medicine Co. v. Hopkins, 83 Wis. 309, 53 N. W. 501.

A nonexpert is not competent to testify as to the genuineness of handwriting where his opinion is founded wholly on the comparison of the handwriting in question with other genuine handwritings.  6 Enc. Ev. 394; Spottiswood v. Weir, 80 Cal. 448, 22 Pac. 289; Clark v. Wyatt,

15 Ind. 271, 77 Am. Dec. 90; Mixer v. Bennett, 70 Iowa, 329, 30 N. W. 587; First Nat. Bank v. Lierman, 5 Neb. 247; Remington Paper Co. v. O'Dougherty, 81 N. Y. 474; Jarvis v. Vanderford, 116 N. C. 147, 21 S. E. 302; Wimbish v. State, 89 Ga. 294, 15 S. E. 325.

The issues as made up by the pleadings have not been fairly submitted under correct and proper instructions, and defendant, by the erroneous instructions of the court and by the rulings of the court on the admission of evidence and upon the trial in other respects, has not had that fair trial to which she is entitled. Putnam v. Prouty, 24 N. D. 517, 140 N. W. 93; Moline Plow Co. v. Gilbert, 3 Dak. 239, 15 N. W. 1; Owen v. Owen, 22 Iowa, 270; Forzen v. Hurd, 20 N. D. 42, 126 N. W. 224; Barton v. Gray, 57 Mich. 622, 24 N. W. 638.

The creditor has the burden of proving authority for the application of money received by him, when the same is questioned. 2 Enc. Ev. 808, 809 et seq.; Boyd v. Jones, 96 Ala. 305, 38 Am. St. Rep. 100, 11 So. 405.

Or where there is only one debt, why the payment made was not applied on it. Mann v. Major, 6 Rob. (La.) 475; Hill v. Pettit, 23 Ky. L. Rep. 2001, 66 S. W. 188; 9 Enc. Ev. 703, et seq.; Hansen v. Kirtley, 11 Iowa, 565; Dougherty v. Deeney, 45 Iowa, 443.

*Forbes & Lounsbury* and *O. S. Sem,* for respondent.

Where error which has occurred on the trial was occasioned or invited by the appellant, he is estopped to complain. 3 Cyc. 242.

The plea of payment in the answer is an affirmative one, and the burden was upon appellant to establish such payment. 22 Am. & Eng. Enc. Law, 537 and cases cited, 587; 9 Enc. Ev. 700; Atlantic Dock Co. v. New York, 53 N. Y. 67; Gray v. Herman, 75 Wis. 453, 6 L.R.A. 691, 44 N. W. 248; Ketelman v. Chicago Brush Co. 65 Neb. 429, 91 N. W. 282.

The court submitted the question of payment to the jury and the jury found for respondent. If errors were committed, the supreme court will not grant reversal unless it clearly appears that they were prejudicial. 2 Enc. Pl. & Pr. 500; S. J. Vidger Co. v. Great Northern R. Co. 15 N. D. 501, 107 N. W. 1083.

Counsel for appellant brought out themselves the very evidence to which they now object. They are estopped to raise the question. 3 Cyc. 242; Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359; Reisch

v. People, 229 Ill. 574, 82 N. E. 321; Jensen v. Sheard, 49 Wash. 593, 96 Pac. 2.

The trial court has the right to strike out evidence without a motion and without stating any ground or reason for so doing. 9 Enc. Ev. 134, and cases cited; Jones, Ev. De Luxe ed. §§ 172, 173 and 893.

It is the duty of the court to see that answers of witnesses to questions are both definite and responsive. Kielbach v. Chicago, M. & St. P. R. Co. 13 S. D. 629, 84 N. W. 192; State v. Carpenter, 124 Iowa, 5, 98 N. W. 775; Christensen v. Thompson, 123 Iowa, 717, 99 N. W. 591.

There was ample proof to support the verdict. 3 Cyc. 242; Hillman v. Hulett, 149 Mich. 289, 112 N. W. 918; Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359.

Burke, J. In the year 1910, defendant owned and operated a farm in Sargent county, North Dakota, containing something over 1,000 acres. In March of that year, while upon a visit in Missouri, she met plaintiff, who was a married man with two small children. While there an arrangement was made between the two, whereunder plaintiff brought his family to defendant's farm in North Dakota.

Plaintiff's version is as follows:

She wanted me to come to North Dakota to work on her farm as foreman, and she was to give me $30 a month and furnish transportation to Milnor, and I told her,—asked her if I would have to pay the car fare, and she said "Yes," and then I told her I would not come; then she said she was willing to pay $30 a month and furnish me transportation to Milnor, and that at any time either party was dissatisfied the money was due. . . .

Q. You say that your arrangement with the defendant, Miss Blew, in this case, was that she should pay you $30 a month and pay the transportation for yourself and family to Milnor?

A. For myself.

Q. Yourself alone?

A. Yes.

Q. Not for your family?

A. No.

Q. Just for yourself?

A. Yes.

The defendant's version is that she was to pay him $30 a month for an entire year, which should include his wife's labor, and that she was to advance railroad fare and pay a $23 store bill which plaintiff owed there, but that the railroad fare and the store bill were to be reimbursed her from his wages. There is no substantial dispute that defendant advanced $47.75, which paid for plaintiff and his wife and a half-fare ticket for one of the children, and there is likewise little dispute that defendant's brother signed a note with plaintiff for the store bill aforesaid, and that defendant later paid the note. Upon reaching North Dakota, plaintiff continued in the employ of the defendant until the 9th of August, when a dispute arose between himself and the defendant, regarding which plaintiff testifies:

Q. Go right on and tell what she said and what you said.

A. She wanted me to go down to the machine and haul bundles, and I refused to go off the place. I didn't think it was my place, and she said I could haul bundles or quit, so I quit,—went to settle up at the house,—she had a little house out west of the big house, and she told me to get my book and she would settle. . . . I got a settlement out of her. She told me what her account was for, and I saw it was all right, and she figured up the store account and stuff she had paid cash for, and she figured up the stuff and it came to $3.66, and that was taken up and $20 in cash.

Q. What amount, if any, was found due you?

A. $107.29.

Q. What did she say to this?

A. Why, she told me she would pay it and started to write a check, and her brother came out of the granary and told her not to pay; that they had no money in the bank.

Q. What date was that?

A. The 9th of August.

Miss Blew's version is as follows: "He said my brother had put him on a rack to go out and work, and he said he was one of the regular men, and he did not think it was fair to put one of the month men on a rack to go out and work when we had higher-priced men that were getting the going harvest wages; that he was just getting the going wages, and I said I did not think it would make any difference to my brother if he would take a grain tank,—we had just begun threshing, the ma-

chines had pulled on the place before dinner, and they were just going out threshing,—one tank had gone out and another one was to go out,—and I said to him, 'Is your team harnessed up?' and he said 'Yes,' and I wanted him to hitch onto a grain tank; 'it would be all right with my brother,' I says, 'if it is not I will make it all right,—you go out on a grain tank, it won't make a bit of difference.' And then he said 'No.' He would not do it unless I would give him $2.50 a day. That is what he asked me and I says 'I can't do it.' I says 'I can't,' and I talked to him about five minutes trying to induce him to take out a grain tank, and he would not do it. . . . Q. At that time, did you tell Tharp that he might quit? A. No."

It is admitted that defendant paid plaintiff the sum of $20 in cash and advances in groceries to the amount of $3.75 after his arrival in North Dakota. That plaintiff knew of the store bill in Missouri being paid appears from a letter introduced in evidence and written to him by De Bold Brothers, which reads as follows:

                              Mt. Rose, Mo., September 5, 1910.
Mr. Jess Tharp,
    Milnor, North Dakota.
Dear sir:—

Yours of the 2d at hand, in regard to the note. Before you left here, I gave you a bill of your account, and you gave me your note for the amount, which was $22.52, March 29, 1910, with Adden Blew security; interest on note up to August 25 is 75 cents, making a total of $23.27. I gave this note to Bertie Blew over here, and she sent it to her sister Gertie and Bertie paid us here for that amount. If Gertie has the note in her possession,—or whoever has—you owe them that amount to August 25.

Take up this note and you are even. That is all we have against you at this store.

You must understand that whoever holds this note, you owe them that amount. Hoping this will be satisfactory,
                         Yours truly,
                         (Signed)   De Bold Brothers.

P. S. Am sending Gertie a duplicate of this letter so you can agree on terms.

Plaintiff upon the stand admitted that he owed this bill and that he had given the note therefor, but said he did not ask Blew to sign with him.

Plaintiff brought suit in justice court upon his version of the contract, and the case was appealed first to the district court and then to the supreme court, being found at 23 N. D. 3, 135 N. W. 659. Upon its return to the district court, the present trial was had, which resulted in a judgment for the plaintiff in the sum of $107.29, this verdict being undoubtedly reached by allowing plaintiff $30 per month for the time he was employed, deducting therefrom only the $20 cash and $3.75 groceries paid to him in North Dakota, and disallowing the railway fare and store bill from Missouri. Defendant appeals setting up numerous assignments of error, among them objections to the charge of the court to the jury, of which he says: "Our chief objection to the instructions is that they do not define the issues in that (1) they do not limit a recovery under the terms of the contract set up in the complaint, as that contract has been construed by the supreme court; (2) under the wording and terms of that contract, they do not require or limit the jury in finding the value of the services alleged from the evidence in the case; (3) they do not submit the defendant's claims and plea of payment and offset, nor her counterclaims." They also object to that portion of the charge wherein the court instructed as follows: "If the defendant, Miss Blew, paid the note, Exhibit B, without the knowledge or consent of the plaintiff, then the payment so made by the defendant would be what is known in law as a voluntary payment, and the defendant cannot be credited with the amount of the payment."

(1) Without setting up the charge to the jury in full, we will say that after careful examination it appears to us to be wholly inadequate, confusing, and misleading, and that it not only was liable to, but did, actually mislead the jury to the prejudice of the defendant. A careful reading of the evidence has convinced us that the verdict is contrary to the evidence, and that under proper instructions a jury could not have found for the plaintiff in any sum exceeding $35.10. In view of the fact that this is the second time this case has been to the supreme court, and the interests of the parties, as well as of the state, require that the matter be brought to a conclusion, we have decided to order: "That the judgment of the trial court be reversed and a new trial ordered, un-

less within a period of thirty days after the receipt of the remittitur in the lower court, the plaintiff shall, in writing, consent to a reduction of the amount named in the verdict to said sum of $35.10. Appellant will recover her costs in this appeal.